**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 25–cv–01572–RMR–MDB
Civil Action No. 25–cv–01668–RMR–MDB
Civil Action No. 25–cv–02177–RMR–MDB

DEFENDING EDUCATION;
COLORADO PARENT ADVOCACY NETWORK;
PROTECT KIDS COLORADO;
DO NO HARM;
TRAVIS MORRELL;
VALERI LESWING;
MOUNTAIN PEDIATRICS,
COMMITTEE OF FIVE, INC., and
DOXA ENTERPRISES, LTD,

Plaintiffs,

v.

AUBREY C. SULLIVAN, Director of the Colorado Civil Rights Division, in her official capacity,
SERGIO RAUDEL CORDOVA,
GETA ASFAW,
MAYUKO FIEWEGER,
DANIEL S. WARD,
JADE ROSE KELLY,
ERIC ARTIS, as members of the Colorado Civil Rights Commission, in their official capacities, and
PHIL WEISER, Colorado Attorney General, in his official capacity,

Defendants.

---

**ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION**

---

Over time, Colorado has amended the Colorado Anti-Discrimination Act ("CADA") to expand and clarify protections against discrimination based on sexual orientation, gender identity, and gender expression. Those statutory protections, and their application

in particular contexts, have also been the subject of recurring litigation, including constitutional challenges in both state and federal courts.

The Colorado legislature once again amended CADA in May 2025 when it enacted HB25-1312 (the "Act"). Plaintiffs in this case have challenged CADA as amended by the Act, asserting that it unconstitutionally regulates their speech and, thus, violates the First and Fourteenth Amendments. It is well-established that federal courts are courts of limited jurisdiction and that plaintiffs must have standing before a federal court can reach the merits of a case. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). Thus, the question before the Court today is: Which Plaintiffs, if any, have standing to bring their asserted claims?

Plaintiffs believe that sex is "immutable" and "fixed at birth." Thus, they claim that the Act violates their First Amendment right to refer to individuals by their biological pronouns (also known as "misgendering" or "deadnaming"). To date, no Plaintiff has alleged that CADA has been enforced against them. Therefore, Plaintiffs contest the constitutionality of CADA's discrimination in places of public accommodation statute with the Act's amended definitions through "pre-enforcement" challenges. Defendants request the Court dismiss Plaintiffs' complaints for lack of standing, and Defendant Attorney General Phil Weiser ("Attorney General") asserts Eleventh Amendment immunity.[1] Magistrate Judge Braswell recommends the Court find that Attorney General Defendant does not have Eleventh Amendment immunity in this case, that Defendants' Motions to

[1] Defendants filed Motions to Dismiss in *Defending Education, et al, v. Sullivan, et al.*, No. 25-cv-01572-RMR-MDB ("*Defending Education*") at ECF Nos. 81, 82; *Committee of Five, Inc. v. Sullivan, et al.*, No. 25-cv-01668-RMR-MDB ("*Committee of Five*") at ECF Nos. 69, 70; and *Doxa Enterprises, Ltd., v. Sullivan, et al.*, No. 25-cv-02177-RMR-MDB ("*Doxa*") at ECF Nos. 33, 34.

Dismiss be granted in part and denied in part, and that Defending Education, Colorado Parent Advocacy Network, and Protect Kids Colorado's claims be dismissed without prejudice for lack of standing.[2] The Attorney General Defendant and Division and Commission Defendants each filed objections, ECF Nos. 132-33,[3] and *Defending Education* Plaintiffs filed an objection as well, ECF No. 134.[4] Plaintiffs filed responses to Defendants' objections, ECF No. 138,[5] and Defendants filed a response to *Defending Education* Plaintiffs' objection, ECF No. 137. For the reasons stated below, the Court accepts and adopts the Recommendation.[6]

## I. BACKGROUND

Magistrate Judge Braswell thoroughly summarizes in her Recommendation the current posture of these cases, the statutes at issue, and the parties involved. *Defending Education*, ECF No. 125.[7] Therefore, the Court will only briefly address these background topics.

### A. CADA

The "Discrimination in places of public accommodation" statute under CADA as amended states:

> It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability, race, creed, color,

[2] The Recommendation was also entered in *Defending Education*, ECF No. 125; *Committee of Five*, ECF No. 113; and *Doxa*, ECF No. 72.
[3] Similar objections were filed by the Attorney General Defendant and Division and Commission Defendants in *Committee of Five*, ECF Nos. 119-20, and *Doxa*, ECF Nos. 78-79.
[4] Plaintiffs did not object to the Recommendation in *Committee of Five* or *Doxa*.
[5] Similar responses were filed by *Committee of Five* Plaintiffs, ECF No. 123, and *Doxa* Plaintiffs, ECF No. 82.
[6] The Court has also reviewed Plaintiffs' Notices of Supplemental Authority and Defendants' Responses. *See Committee of Five*, ECF No. 124-25; *Doxa*, ECF No. 83-84.
[7] *See also*, *Committee of Five*, ECF No. 113 and *Doxa*, ECF No. 72.

> sex, sexual orientation, **gender identity**, **gender expression**, marital status, national origin, or ancestry the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation **or, directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual or that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable** because of disability, race, creed, color, sex, sexual orientation, **gender identity**, **gender expression**, marital status, national origin, or ancestry.

Colo. Rev. Stat. § 24-34-601(2)(a) (emphases added). The Act amends CADA's definition of "gender expression" to:

> an individual's way of reflecting and expressing the individual's gender to the outside world, typically demonstrated through appearance, dress, behavior, **chosen name**, and how the individual chooses to be addressed.

*Id.* § 24-34-301(9) (emphasis added). It also amends "chosen name" to mean:

> a name that an individual requests to be known as in connection to the individual's disability, race, creed, color, religion, sex, sexual orientation, gender identity, gender expression, marital status, familial status, national origin, or ancestry, so long as the name does not contain offensive language and the individual is not requesting the name for frivolous purposes.

*Id.* § 24-34-301(3.5). And finally, "gender identity" is defined under CADA as:

> an individual's innate sense of the individual's own gender, which may or may not correspond with the individual's sex assigned at birth.

*Id.* § 24-34-301(10).

An individual alleging a violation of CADA can bring a civil action in state court, *see* Colo. Rev. Stat. § 24-34-602(1)(a), or file charges alleging discrimination with the Colorado Civil Rights Division ("CCRD"). *See* Colo. Rev. Stat. § 24-34-306(1). Additionally, the Attorney General, Colorado Civil Rights Commission ("Commission"), or individual commissioners can bring a complaint when the alleged discriminatory practice "imposes a significant societal or community impact." *See id.* § 24-34-306(1)(b). Once a complaint is filed, the Director of CCRD "investigates the allegations and determines whether the charge is supported by probable cause. If probable cause is found, the Director provides the parties with written notice and commences a compulsory mediation. If mediation fails, a hearing may be held before the Commission, a single Commissioner, or an administrative law judge. If a violation is found after a hearing, the Commissioner may issue a cease and desist order against the offending public accommodation." *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1169 (10th Cir. 2021), *rev'd on other grounds*, 600 U.S. 570 (2023). When the Commission decides to pursue a case, the Attorney General's office is tasked with prosecuting that case before an administrative law judge. 3 Colo. Code Regs. § 708-1:10.7(A)(3).

**B. Background on Plaintiffs**

*Defending Education* plaintiffs are various non-profit organizations (Defending Education, Colorado Parent Advocacy Network, Protect Kids Colorado, and Do No

Harm), two individuals (Dr. Travis Morrell and Dr. Valeri Leswing), and Dr. Leswing's medical practice, Mountain Pediatrics. *Defending Education*, ECF No. 27 at 12-13.[8]

Defending Education ("DE") is "a nationwide, grassroots, 501(c)(3) non-profit membership organization whose members include parents, students, and other concerned citizens." *Defending Education*, ECF No. 25 ¶ 12. "DE strongly opposes the spread of harmful gender ideology and so-called gender-affirming care" and "strives to protect the right of its members to speak freely about these topics." *Id.* ¶ 47. It "regularly litigates on behalf of its members to protect their First Amendment right to refer to individuals using biologically accurate pronouns and/or birth names" and "publishes informational resources about the scope of, and threats to, constitutional speech rights." *Id.* DE claims standing through its members and does not assert organizational injury. *Id.* ¶ 49;

Do No Harm ("DNH") is "a nationwide, grassroots, 501(c)(3) non-profit membership organization whose members include healthcare professionals, students, patients, and policymakers." *Id.* ¶ 15. "DNH opposes the use of chosen names, preferred pronouns, and so-called gender-affirming medical treatments." *Id.* ¶ 98. Like DE, DNH also "litigates to protect its members' First Amendment rights and educates its members about threats to free expression in the medical field." *Id.* DNH claims standing through its members and does not assert organizational injury. *Id.* ¶ 99;

---

[8] The Court references the docket entry page number in its citations throughout this Order, rather than the internal document page number, if different.

Colorado Parent Advocacy Network ("CPAN") is "a statewide, grassroots, 501(c)(4) non-profit organization" with the mission "to defend the fundamental right of parents to direct the upbringing, care, and education of their children." *Id.* ¶ 13. CPAN "opposes policies and practices . . . concerning gender ideology, that undermine truth, biological reality, and the role of parents in their children's lives." *Id.* ¶ 52. "CPAN regularly offers informational resource and hosts public events about the state of education in Colorado." *Id.* ¶ 53. The organization hosts "meetings, summits, and other events in places of public accommodation" and claims it is therefore subject to CADA. *Id.* ¶ 58. CPAN claims standing on its own, not through its members, and asserts organizational injury. *Id.* ¶ 73;

Protect Kids Colorado ("PKC") is "a statewide, grassroots, 501(c)(4) non-profit organization" that "aims to restore the principle that parents have a fundamental right to make decisions about their children's wellbeing and education." *Defending Education*, ECF No. 25 ¶ 14. "The organization raises awareness about the prevalence of controversial gender ideology in Colorado's public schools, warns parents of the need to closely monitor their children's education, and hosts public events on those same topics." *Id.* ¶ 76. Because the organization "hosts meetings and other events in places of public accommodation," PKC claims it is subject to CADA. *Id.* ¶ 81. And, like CPAN, PKC asserts organizational injury. *Id.* ¶ 96;

Dr. Travis Morrell is a dermatologist and dermatopathologist whose "medical practice focuses on the diagnosis and treatment of serious skin conditions. . ." *Id.* ¶ 16. Dr. Morrell "believes that sex is determined at birth and is immutable, regardless of an

individual's internal perceptions about their identity." *Id.* ¶ 100. "In line with his beliefs, when transgender patients are in his office, Dr. Morrell does not want to be forced to use 'chosen names' or 'preferred pronouns' when addressing or referring to them." *Id.* ¶ 105. He also "wants to publish materials that refer to individuals using biological pronouns and birth names, even if those pronouns or names conflict with an individual's self-professed gender identity or gender expression. *Id.* ¶ 108. Dr. Morrell is a member of DNH. *Id.* ¶ 99; and

Dr. Valeri Leswing is a pediatrician whose "practice focuses on providing complete pediatric care for children and young adults. . ." *Id.* ¶ 17. She is the sole owner and physician of her medical practice, Mountain Pediatrics. *Id.* ¶ 18. Dr. Leswing "does not address or refer to patients using 'chosen names' connected to their 'gender expression' or preferred pronouns that conflict with the patient's biological sex." *Id.* ¶ 121. She, too, "wants to publish materials expressing her belief that sex is fixed at birth and immutable and that it is wrong and medically harmful to address or refer to someone using non-biological pronouns, chosen names, or other terms." *Id.* ¶ 128. Dr. Leswing is also a member of DNH. *Id.* ¶ 99.

*Committee of Five* plaintiff is an athletic-apparel retailer called XX-XY Athletics ("XX-XY") with a distinct message and mission: "to empower women and protect women's sports and women's spaces." *Committee of Five*, ECF No. 1 ¶ 1. XX-XY's message and mission are "grounded in the belief that men and women are physiologically different; sex is binary, biological, and immutable; women deserve the chance to be champions in their own sports." *Id.* XX-XY uses its platform to draw attention to "men and boys who compete

in women's sports" and "refers to them with masculine pronouns and terms, often using their given name, rather than their chosen names." *Id.* ¶ 2. XX-XY interacts with customers and members of the public online and in person and, when responding to a customer or member of the public, "would not knowingly use pronouns, honorifics, or similar language that was inconsistent with the individual's biological sex." *Id.* ¶¶ 92-94. XX-XY claims standing as a corporation and asserts organizational injury. *Id.* ¶ 12.

Finally, *Doxa* plaintiff is a Christian bookstore, Born Again Used Books ("Born Again"), in Colorado Springs with the "mission [] to provide literature that supports customers in their relationship with God and others." *Doxa*, ECF No. 4-1 at 10. Born Again "curates its selection according to its Christian faith, refusing to sell books with a message contradicting the store's mission of providing uplifting Christian support." *Id.* It "happily sells books to everyone." *Id.* at 9. However, to stay true to its beliefs, Born Again "will not use pronouns, honorifics, or other language inconsistent with a person's sex." *Id.* Additionally, it would like to "formalize this policy, publish it to its employees and customers, and publicly explain the religious basis for the policy, including by writing about it on the Bookstore's blog." *Id.* Born Again claims standing as a limited liability company and asserts organizational injury. *Doxa,* ECF No. 1 ¶ 12.

**C. Motions to Dismiss**

The Attorney General and the Division and Commission Defendants ("CCRD Defendants") filed consolidated Motions to Dismiss each Plaintiffs' claims. Together, Defendants argue that Plaintiffs have failed to establish that they have standing and that

their claims are not ripe. *Defending Education*, ECF No. 82 at 34.[9] Additionally, the Attorney General argues that Plaintiffs' claims against him are barred by sovereign immunity. *Defending Education*, ECF No. 81 at 7. In her Recommendation, Magistrate Judge Braswell analyzes Defendants' arguments with respect to each group of Plaintiffs. She acknowledges that this Court previously denied Plaintiffs' Motions for Preliminary Injunction due to the "scope of the relief requested" and Plaintiffs' failure to make "a 'clear showing' of a credible threat of enforcement." *Defending Education*, ECF No. 125 at 13. Indeed, the burden on Plaintiffs to satisfy the strict preliminary injunction test exceeds the burden to survive a motion to dismiss and proceed with their claims. As a result, Magistrate Judge Braswell comes to a different conclusion in response to Defendants' Motions to Dismiss than she did when evaluating Plaintiffs' Motions for Preliminary Injunction.

The fundamental First Amendment concern presented by Plaintiffs is not new. On March 31, 2026, the same day this Court issued its ruling on Magistrate Judge Braswell's Recommendation regarding Plaintiffs' Motions for Preliminary Injunction, the Supreme Court published its opinion on a similar First Amendment question involving another Colorado statute. In *Chiles*, Justice Gorsuch wrote that "any law that suppresses speech based on viewpoint represents an 'egregious' assault on both" the First Amendment's commitment to (1) "shield against any effort to enforce orthodoxy in thought or speech in this country" and (2) protect the "inalienable right to think and speak freely, and a faith in the free marketplace of ideas as the best means for discovering truth." *See Chiles v.*

[9] *See also*, *Committee of Five*, ECF No. 70 at 34, and *Doxa*, ECF No. 34 at 34.

*Salazar*, 607 U.S. 627, 655 (2026). The Supreme Court reversed and remanded the Tenth Circuit's denial of the plaintiff's request for a preliminary injunction.

Given the Supreme Court's recent opinion and the procedural posture of the instant case, the Court must examine Plaintiffs' claims and CADA's restrictions under the appropriate scrutiny. Magistrate Judge Braswell recommends that this Court find all Plaintiffs, except DE, CPAN and PKC, have articulated that there is a credible threat of enforcement of CADA against them or that CADA has unconstitutionally chilled their speech. Further, Magistrate Judge Braswell endorses the finding that the Attorney General falls within the *Ex Parte Young* exception and, therefore, is not shielded by sovereign immunity. Therefore, she recommends the Motions to Dismiss be granted in part and denied in part and that DE, CPAN, and PKC's claims be dismissed without prejudice for lack of standing. For the reasons stated below, the Court ACCEPTS and ADOPTS the Recommendation.

## II. LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

## III. ANALYSIS

The purpose of the First Amendment is "to protect 'the freedom to think as you will and to speak as you think.'" *303 Creative LLC v. Elenis*, 600 U.S. 570, 584 (2023) (quoting *Boy Scouts of America v. Dale*, 530 U.S. 640, 660-61 (2000)). In accordance with this protection, the Supreme Court has "long held that laws regulating speech based on its subject matter or 'communicative content' are 'presumptively unconstitutional.'" *Chiles*, 607 U.S. at 640 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). "'[C]ontent-based' restrictions trigger 'strict scrutiny,'" which requires the government to prove its regulation is "narrowly tailored to serve compelling state interests." *Id.* "Viewpoint discrimination," or restrictions on speech based on subject matter that dictate the particular opinion individuals may express on that subject, is "an egregious form of content regulation" that governments in this country "must nearly always abstain from." *Id.* at 641.

The crux of Plaintiffs' claims is that CADA's "Discrimination in places of public accommodation" statute, as amended by the Act, is a content-based restriction and ultimately unconstitutional. However, at this juncture, the question before the Court is not the constitutionality of CADA's public accommodations statute. Instead, it is whether Plaintiffs have standing to proceed with their claim to even reach the merits issue of

constitutionality. To establish standing for a First Amendment pre-enforcement claim, a plaintiff must demonstrate they intend to "engage in arguably protected conduct that is covered by the challenged governmental action" and face "a credible threat of enforcement." *Gays Against Groomers v. Garcia*, 169 F.4th 981, 991 (10th Cir. 2026).

The Recommendation categorizes Plaintiffs into separate groups: (1) the "Commerce Plaintiffs"—XX-XY and Born Again; (2) the "Medical Plaintiffs"—Dr. Morrell, Dr. Leswing, and Mountain Pediatrics; and (3) the "Advocacy Plaintiffs"—CPAN, PKC, DNH, and DE. In the Motions to Dismiss, Defendants argue that:

- The "Commerce Plaintiffs," which include XX-XY and Born Again, have not established that their conduct is proscribed by CADA. *Defending Education*, ECF No. 82 at 27-32;
- The Commerce Plaintiffs and the "Medical Plaintiffs," which include Dr. Morrell, Dr. Leswing, and Mountain Pediatrics, have failed to demonstrate a credible threat of enforcement. *Id.* at 23-32;
- Medical Plaintiffs have not established by a preponderance of the evidence that their speech has been chilled. *Id.* at 23-25;
- The "Advocacy Plaintiffs," which include CPAN, PKC, DNH, and DE, lack standing because CPAN and PKC are not places of public accommodation and DNH and DE cannot assert standing through their members. *Id.* at 21-23, 27; and
- The Eleventh Amendment sovereign immunity precludes Plaintiffs' claims against the Attorney General. *Defending Education*, ECF No. 81 at 7-12.

In her Recommendation, Magistrate Judge Braswell meticulously evaluates Defendants' arguments and ultimately concludes that each Plaintiff (other than CPAN, PKC, and DE) has demonstrated either a credible threat of enforcement or chilling effect on their speech as a result of CADA as amended by the Act to have standing. Additionally, Magistrate Judge Braswell finds the Attorney General's Eleventh Amendment immunity argument inapplicable in these circumstances.

CCRD Defendants raise several objections, arguing that:

- Plaintiffs have not established that their conduct is arguably proscribed by CADA;
- Plaintiffs have not met their burden in proving credible threat of enforcement for standing,
- Medical Plaintiffs have not established their speech has been chilled;
- Plaintiffs do not have standing to challenge CADA's publication clause;
- Dr. Morrell lacks standing based on his personal advocacy; and
- Standing and ripeness analyses have distinct standards and are not "coterminous."

*Defending Education*, ECF No. 132 at 4-13. The Attorney General suggests the Recommendation erred in denying him sovereign immunity. *Defending Education*, ECF No. 133 at 4. Additionally, *Defending Education* Plaintiffs contest Magistrate Judge Braswell's recommendation that CPAN, PKC, and DE lack standing. *Defending Education*, ECF No. 134. The Court first addresses the Attorney General's objection

regarding sovereign immunity, then CCRD Defendants' objections, followed by Plaintiffs' objections.[10]

### A. The Attorney General Defendant's Objections

The Attorney General submitted an objection arguing that Magistrate Judge Braswell erred in denying him sovereign immunity. *Defending Education*, ECF No. 133.[11] The Attorney General argues that the Recommendation (1) applied an overly lenient standard by reasoning that the Attorney General need only have "some connection" to enforcement of a challenged law, and (2) erred on the merits in concluding the Attorney General "has a particular enforcement duty sufficient for *Ex parte Young*." *Id.* at 4-5.

"The Eleventh Amendment 'generally bars suits brought by individuals against state officials acting in their official capacities." *Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1252 (D. Colo. 2019) (citing *Harris v. Owens*, 264 F.3d 1282, 1289 (10th Cir. 2001)). However, Eleventh Amendment immunity is not absolute. *Id.* The *Ex parte Young* exception "permits suits against state officials seeking to enjoin alleged ongoing violations of federal law." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Crowe & Dunlevy, P.C. v. Stidham,* 640 F.3d 1140, 1154 (10th Cir.2011)). When making an officer of the state a party defendant, "such officer must have some connection with the enforcement of the act." *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). The Tenth Circuit has explained that state official defendants "are not

[10] Plaintiffs filed separate responses to Defendants' Objections. *Defending Education*, ECF No. 138; *Committee of Five*, ECF No. 123; and *Doxa*, ECF No. 82. Additionally, Defendants filed a response to *Defending Education* Plaintiffs' Objection regarding CPAN, PKC and DE. *Defending Education*, ECF No. 137.
[11] *See also*, *Committee of Five*, ECF No. 120, and *Doxa*, ECF No. 79.

required to have a 'special connection' to the unconstitutional act or conduct." *Id.* But they "must have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* (citing *Prairie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 828 (10th Cir.2007)).

The Recommendation clearly outlines the Attorney General's "particular duty to enforce" and "demonstrated willingness to enforce." *Defending Education*, ECF No. 132 at 27-30. Under CADA, the Attorney General can bring a complaint when allegedly discriminatory practice "imposes a significant societal or community impact." Colo. Rev. Stat. § 24-34-306(1)(b). Additionally, the CCRD Code of Colorado Regulations states that when a case is set for formal hearing, "[t]he case in support of the complaint shall be presented at the hearing by the attorney general's office as counsel in support of the complaint, pursuant to § 24-34-306(8), C.R.S." 3 Colo. Code Regs. § 708-1:10.7(A)(3). In other words, the administrative system for addressing and resolving alleged violations directly assigns the Attorney General with a particular duty to enforce CADA.

Next, Magistrate Judge Braswell aptly reasons that "the Court's credible-threat finding leaves little room for doubt on the demonstrated-willingness prong" of the *Ex parte Young* exception. *Defending Education*, ECF No. 125 at 29 (citation omitted). The Attorney General has not expressly disavowed any possibility of future enforcement of CADA. In fact, the Attorney General has a statutory duty to enforce when a CADA case is set for formal hearing. Therefore, the Recommendation did not err in concluding that the Attorney General satisfies the second prong of the *Ex parte Young* exception.

Finally, Magistrate Judge Braswell points out that the Attorney General's sovereign immunity defense has previously been dispensed with in prior litigation regarding CADA's enforcement. *See Masterpiece Cakeshop Inc.*, 445 F. Supp. 3d at 1253. Given the similarities between this case and *Masterpiece Cakeshop*, as well as the several other First Amendment cases that have come out of Colorado, the Court finds no reason to stray from these established sovereign immunity analyses. Therefore, the Court accepts and adopts the Recommendation's conclusion that the Attorney General is not protected by sovereign immunity.

**B. CCRD Defendants' Objections**

**1. Commerce and Medical Plaintiffs have established their conduct is arguably proscribed by CADA**

Having determined that the Eleventh Amendment does not constitute a bar to Plaintiffs' claims, the Court next must determine whether the Plaintiffs each have standing to pursue their claims. As explained above, to establish standing for a First Amendment pre-enforcement claim, a plaintiff must demonstrate they intend to "engage in arguably protected conduct that is covered by the challenged governmental action" and face "a credible threat of enforcement." *Gays Against Groomers*, 169 F.4th at 991.

In the Recommendation, Magistrate Judge Braswell explains that the conduct "described by the Commerce Plaintiffs is at least more likely than not to give rise to a denial—or perceived denial—of services at some point in the future" and, therefore, the Commerce Plaintiffs "have established by a preponderance of the evidence that their conduct is arguably proscribed by CADA." *Defending Education*, ECF No. 125 at 18. CCRD Defendants suggest the Recommendation "lowers the standing bar too far,"

*Defending Education*, ECF No. 132 at 5, and that CADA "only prohibits [misgendering and deadnaming] when it rises to the level of harassment that denies the full and equal enjoyment of a public accommodation's goods and services based on protected class status," *id.* at 7.

First, CCRD Defendants challenge the Recommendation's reliance on the Tenth Circuit's decision in *Scott v. Allen*, 153 F.4th 1088 (10th Cir. 2025), arguing that the instant case is distinguishable because the *Scott* plaintiff had already been found to have violated the statute at issue. *Defending Education*, ECF No. 132 at 5. In *Scott*, the plaintiff was a professional process server who had a contentious experience serving a Colorado state trooper. *Scott*, 153 F.4th at 1090. Scott wanted to create a platform for people to publish "allegations of police officer misconduct and otherwise publicize police officers accused of abusing the public trust." *Id.* He also intended to "publish video clips from the body camera he wore while serving [the state trooper] and the affidavit he served with the subpoena." *Id.* Although Scott created the website, "copscore.com," he had not published any content on his website. *Id.* Scott feared that publication of information about peace officers violated Colorado Revised Statute § 18-9-313(2.7), which prohibits disclosure of law enforcement personal information. *Id.*

Scott filed suit against his local district attorney, seeking a declaration that the statute he was accused of violating was "facially unconstitutional and unconstitutional as applied to him." *Id.* at 1091. The district court concluded that "that he lacked standing to pursue a pre-enforcement challenge to the statute," because "Scott did not show an injury in fact because he did not show that his conduct was 'arguably proscribed' by the statute."

*Id.* Scott appealed, and the Tenth Circuit reversed and remanded. The appellate court "read the record to support that Scott's conduct is at least arguably proscribed by the statute and the statute credibly chills his desire to engage in protected speech." *Id.* The Tenth Circuit explained that Scott's conduct was "arguably proscribed by the statute," because "at least one professional association believe[d] that Scott violated the statute, and the District Attorney himself refuse[d] to disavow that Scott's intended actions d[id] not fall under the statute." *Id.* at 1096-97. The district attorney "stated that his office had never threatened prosecution under the statute, but acknowledged . . . that he ha[d] not disavowed any possibility of future prosecution." *Id.* at 1097 (citation omitted).

Similarly here, CCRD Defendants have not disavowed any possibility of future prosecution. Instead, CCRD Defendants claim that a CADA violation only occurs when the conduct rises to the level of harassment and that "no specific facts describing [Plaintiffs'] planned interactions would permit such inquiry." *Defending Education*, ECF No. 132 at 4. However, *Scott* establishes that the government's reluctance to disavow future prosecution may be enough to suggest that a plaintiff's conduct is "arguably proscribed by the statute." Even under CCRD Defendants' heightened harassment standard, Plaintiffs' intended conduct could be found to violate CADA and, thus, is arguably proscribed by CADA. The Tenth Circuit has determined that pre-enforcement standing exists when "some of the plaintiff's intended conduct may not have been covered by the statute at issue, at least some of it would." *Scott*, 153 F.4th at 1096. In this case, at least some of Plaintiffs' intended conduct may be covered by CADA.

In an effort to differentiate *Scott*, CCRD Defendants point out that, in *Scott*, "the Process Server Association had already concluded that the plaintiff had violated the statute, and the trooper had filed complaints against the plaintiff." *Id.* at 5. This distinction does not meaningfully move the needle. The fact that the Process Server Association found Scott had violated the Association's code of conduct weighed in favor in Scott's standing to pursue his claims. But the Tenth Circuit also considered the government's hesitance to disavow the possibility of future prosecution, the fact that Scott's speech had already been chilled in fear of violating the statute, and the lack of evidence suggesting "that prosecutors would pass if pressed by peace officers to take action if Scott proceed[ed] as he intend[ed]." *Scott*, 153 F.4th at 1097. These same circumstances apply here.

Finally, Defendants cite to several out-of-circuit cases where courts found the plaintiffs did not have standing when "only vague allegations regarding their conduct [left] unclear whether that conduct would violate the statute." *Defending Education*, ECF No. 132 at 3. Although informative, the Court is not bound by these out-of-circuit decisions. In the end, the Court must adhere to the Tenth Circuit's reasoning in *Scott* and the Supreme Court's decision to evaluate the merits beyond standing in *Chiles*. Therefore, the Court agrees with the Recommendation and finds that Plaintiffs have shown that their intended conduct arguably violates CADA to support standing.

**2. Plaintiffs have met their burden in proving credible threat of enforcement**

Next, CCRD Defendants take issue with Magistrate Judge Braswell's conclusion that the credible threat of enforcement element is satisfied to establish standing.

According to CCRD Defendants, the Recommendation "overlooked that Commission Rule 81.6 has made clear since 2009 that misgendering and deadnaming can amount to a violation when they rise to the level of harassment based on sexual orientation." *Defending Education*, ECF No. 132 at 8-9. Again, CCRD Defendants emphasize that "the Division has never, in 17 years, found probable cause for a charge alleging deadnaming and misgendering" and urge the Court to find "absence of past enforcement" weighs against any credible threat of enforcement. *Id.* at 9.

"To prove injury in fact for purposes of pre-enforcement standing, a plaintiff must show an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a threat of prosecution thereunder." *Scott*, 153 F.4th at 1094. A plaintiff's burden to demonstrate "credible threat of enforcement" goes hand-in-hand with his responsibility to establish his intended conduct is proscribed by the challenged statute. The Court has already found that Plaintiffs' intended conduct is arguably proscribed by CADA. Consequently, there is a very real possibility that CADA could be enforced against them. The fact that past enforcement has never happened or that enforcement would only result from a "flexible, multi-factor analysis" is relevant but not essential in the "credible threat of enforcement" analysis. "Circuit and Supreme Court precedent tells us that this is not supposed to be a difficult bar for plaintiffs to clear in the First Amendment pre[-]enforcement context." *Id.* at 1096 (quoting *Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022)). Thus, it naturally follows that there is a credible threat of enforcement against them to satisfy this element of pre-enforcement standing.

**3. Medical Plaintiffs have established their speech has been chilled**

The Recommendation states that the Medical Plaintiffs have satisfied the chilling effect test because (1) "there is no dispute that each [Medical Plaintiff] previously implemented a policy or practice of deadnaming and misgendering customers and patients; (2) each Medical Plaintiff has "demonstrated a present desire to engage in that speech, even if no specific plans to do so at this time;" and (3) each Medical Plaintiff "plausibly alleges that the reason for self-censorship is a credible threat of prosecution." *Id.* at 23. Magistrate Judge Braswell determines these facts are "enough to demonstrate a credible threat of enforcement and, in turn, a chilling effect supporting standing" for the Medical Plaintiffs. *Id.* CCRD Defendants object and repeat the same arguments outlined above.

"To show that a chilling effect is sufficiently concrete and particularized, plaintiffs can produce (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced." *Scott*, 153 F.4th at 1094. In this case, Medical Plaintiffs have produced evidence for each of these categories.

As described in the "Background on Plaintiffs" section, Dr. Morrell believes that sex is determined at birth and is immutable, regardless of gender identity. He does not want to use "chosen names" or "preferred pronouns" when addressing transgender patients. He also wants to publish materials that refer to individuals using biological pronouns and

birth names, even if they conflict with the individual's gender identity or expression. Dr. Leswing, the sole owner and physician of Mountain Pediatrics, also does not address or refer to patients using "chosen names" connected to "gender expression" or "preferred pronouns." She too wants to publish materials expressing her belief that sex is fixed at birth and immutable. Each Medical Plaintiff has spoken out against the use of "chosen names" or "gender expression," intends to deadname and misgender, and expressed concern that their intention to deadname and misgender will violate CADA and result in prosecution against them. Thus, the Court concurs with the Recommendation's conclusion that Medical Plaintiffs have established by a preponderance of the evidence that their speech has been chilled.

**4. Plaintiffs have standing to challenge CADA's publication clause**

CCRD Defendants next highlight the Recommendation's supposed failure to address Plaintiffs' standing with respect to CADA's publication clause. *See* Colo. Rev. Stat. § 24-34-601. CCRD Defendants merely state that their "disavowal precludes Plaintiffs from establishing a credible fear of enforcement under the publication clauses." *Defending Education*, ECF No. 132 at 11. However, as stated above, CCRD Defendants have not disavowed any possibility of future prosecution. Instead, they claim that CADA requires a heightened standard of harassment to trigger enforcement. For the same reasons stated above, the Court is not persuaded that CCRD Defendants have "disavowed" Plaintiffs' conduct and finds Plaintiffs have standing to challenge CADA's publication clause.

**5. Dr. Morrell has standing as a licensed physician**

CCRD Defendants briefly object to the Recommendation's assessment of Dr. Morrell's standing, arguing that the Recommendation's "finding that the advocacy organizations lack standing because they are not places of public accommodations should apply equally to Dr. Morrell's personal advocacy." *Id.* The Court interprets this argument to mean that Dr. Morrell's standing as a physician who provides services to the public is separate from his standing as an individual who advocates for his beliefs outside of practicing medicine. Even if Dr. Morrell's standing could be divided based on his personal and professional conduct, he brings his claims as "a licensed physician and a double board-certified dermatologist and dermatopathologist." *Defending Education*, ECF No. 1 at 5. Thus, the Court does not find his personal advocacy changes his standing status in this case.

**6. Even considering ripeness, Plaintiffs' claims are justiciable**

Finally, CCRD Defendants contend the Recommendation fails to address the justiciability requirement of ripeness. *Defending Education*, ECF No. 132 at 11. Indeed, standing and ripeness are separate justiciability concerns. Both ask "whether the challenged harm has been sufficiently realized at the time of trial." *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004). But ripeness focuses on "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Id.* To determine whether an issue is ripe for review, the Court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.*

In this case, the Court has already determined that enforcement of CADA against Plaintiffs is possible, and Plaintiffs' claims satisfy the first element of ripeness. Additionally, the "challenged action creates a direct and immediate dilemma for the parties." *Id.* at 891. Each Plaintiff has alleged the fear of CADA's enforcement has directly impacted their intended conduct, satisfying the second element of ripeness. Therefore, the Recommendation did not err in finding Plaintiffs, other than CPAN, PKC and DE, had justiciable claims and need not directly address ripeness.

**C. Plaintiffs' Objections**

Finally, the Court addresses Plaintiffs' objections to the Recommendation. Although Magistrate Judge Braswell largely found in favor of Plaintiffs, she recommends the Court dismiss CPAN and PKC for lack of standing because they are not public accommodations and DE for lack of associational standing. *Defending Education*, ECF No. 132 at 24-26. Unsurprisingly, Plaintiffs object and argue that (1) CPAN and PKC have standing because they are arguably subject to CADA; and (2) DE has associational standing because its members have standing. *Defending Education*, ECF No. 134 at 6-14.

The "Discrimination in places of public accommodation" statute under CADA as amended prohibits the refusal or denial of the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation" because of, among other things, "gender identity" or "gender expression." Colo. Rev. Stat. § 24-34-601(2)(a). Both CPAN and PKC contend that they are arguably subject to CADA and, thus, have pre-enforcement standing. Plaintiffs CPAN

and PKC cite to out-of-circuit case law where courts have found the plaintiff's conduct "arguably proscribed" by the challenged statute. *See e.g.*, *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023) ("While Tofurky's interpretation may not be the *best* interpretation, the test doesn't require that. Because Tofurky's reading is *arguable*, it satisfies this prong."). These cases tackle constitutional challenges of statutes unrelated to CADA. In this case, the CADA statute at issue clearly states that it prohibits the refusal or denial of the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a <u>place of public accommodation</u>." Colo. Rev. Stat. § 24-34-601(2)(a) (emphasis added). Therefore, in order to even fall within the confines of the CADA's enforcement, a plaintiff must provide goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

CPAN is an organization that hosts meetings, summits, and other events in places of public accommodation. Similarly, PKC is an organization that hosts public events in places of accommodation. Neither CPAN nor PKC are places of public accommodation that can arguably violate CADA's "Discrimination in places of public accommodation" statute. While Plaintiffs fiercely argue that the plain language of the statute says otherwise, the Court interprets the public accommodations provision of CADA to impact just that—places of public accommodation. The fact that CPAN and PKC may offer services *in* places of public accommodation does not mean they offer services to the public *as* places of public accommodation. Defendant Sullivan has confirmed this understanding, stating that CPAN and PKC do not "offer any good, service, facility, privilege, advantage, or accommodation to the general public that would subject them to

CADA's public accommodation provisions." *Defending Education*, ECF No. 82-1 (Decl. of Aubrey Sullivan) at 214, ¶ 18. Without overcomplicating the semantics, the Court finds CPAN and PKC are not subject to CADA's public accommodation provision and, thus, lack standing to move forward with their claims.

Finally, DE is an organization whose members include parents, students, and other concerned citizens that strongly oppose the spread of "harmful gender ideology." *Defending Education*, ECF No. 25 ¶¶ 12, 47. DE claims standing through these members. To establish "associational standing, the plaintiffs have to prove, inter alia, that its members would otherwise have standing to sue in their own right." *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 550 (10th Cir. 2016). Plaintiffs argue that PKC's executive director, Erin Lee, and CPAN's executive director, Lori Gimelshteyn both are members of DE and have standing on their own to sue. *Defending Education*, ECF No. 134 at 13. According to Plaintiffs, both Ms. Lee and Ms. Gimelshteyn "operate in places of public accommodation whenever they host CPAN and PKC events in hotels, restaurants, conference centers, and other venues." *Id.* Again, Plaintiffs misunderstand CADA's public accommodation provision. Just because Ms. Lee and Ms. Gimelshteyn partner *with* public accommodations does not mean they offer services *as* representatives of places of public accommodation. For these reasons, the Court also finds DE lacks standing to move forward with its claim.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1. CCRD Defendants' Objection[12] to the Recommendation is OVERRULED;
2. The Attorney General's Objection[13] to the Recommendation is OVERRULED;
3. Plaintiffs' Objection[14] to the Recommendation is OVERRULED;
4. The Recommendation[15] is ACCEPTED AND ADOPTED;
5. CCRD Defendants' Motion to Dismiss[16] is GRANTED IN PART and DENIED IN PART;
6. The Attorney General's Motion to Dismiss[17] is GRANTED IN PART and DENIED IN PART; and
7. Defending Education, Colorado Parent Advocacy Network, and Protect Kids Colorado's claims are **DISMISSED WITHOUT PREJUDICE**.

DATED: September 25, 2026

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge

[12] *Defending Education*, ECF No. 132; *Committee of Five*, ECF No. 119; and *Doxa*, ECF No. 78.
[13] *Defending Education*, ECF No. 133; *Committee of Five*, ECF No. 120; and *Doxa*, ECF No. 79.
[14] *Defending Education*, ECF No. 134.
[15] *Defending Education*, ECF No. 125; *Committee of Five*, ECF No. 113; and *Doxa*, ECF No. 72.
[16] *Defending Education*, ECF No. 82; *Committee of Five*, ECF No. 70; and *Doxa*, ECF No. 34.
[17] *Defending Education*, ECF No. 81; *Committee of Five*, ECF No. 69; and *Doxa*, ECF No. 33.