**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

DEFENDING EDUCATION, *et al.*,

*Plaintiffs*,

v.

AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,

*Defendants*.

Case No. 1:25-cv-01572-RMR-MDB

COMMITTEE OF FIVE, INC.,

*Plaintiff*,

v.

AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,

*Defendants*.

Case No. 1:25-cv-01668-RMR-MDB

DOXA ENTERPRISES, LTD.,

*Plaintiff*,

v.

AUBREY C. SULLIVAN, in her official capacity as the Director of the Colorado Civil Rights Division, *et al.*,

*Defendants*.

Case No. 1:25-cv-02177-RMR-MDB

**DIVISION AND COMMISSION DEFENDANTS' MOTION TO CERTIFY A QUESTION OF LAW**

Defendants Aubrey Sullivan, Sergio Cordova, Geta Asfaw, Mayuko Fieweger, Daniel S. Ward, Jade R. Kelly, and Eric Artis, in their official capacities (the "Division and Commission Defendants"), move to certify to the Colorado Supreme Court under Colorado Appellate Rule 21.1 the following question:

> When a complainant's claim for denial of the full and equal enjoyment of a place of public accommodation under C.R.S. § 24-34-601(2)(a) turns exclusively on statements made based on the complainant's protected status, must the complainant establish that the statements create a subjectively and objectively hostile environment?

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), counsel for Division and Commission Defendants conferred with counsel for all parties. The Attorney General consents to the relief sought by this motion.[1] Plaintiffs oppose.

## INTRODUCTION

These three actions all raise the same basic claims—Plaintiffs assert they are subject to the Colorado Anti-Discrimination Act's ("CADA") public accommodation provision, C.R.S. § 24–34–601, and that this provision violates their speech rights under the First and Fourteenth Amendments. Specifically, they assert that CADA prohibits them in all circumstances from using pronouns, names, or other gendered language contrary to a customer's chosen name or preferred pronouns that implicate a customer's protected status. Plaintiffs' argument relies on a sweeping reading of CADA. In comparison, Division and Commission Defendants construe CADA to preclude such statements only when they rise to the level of discriminatory harassment, thereby

[1] The Attorney General asserts all claims against him are barred by sovereign immunity, but as his defense has thus far been denied, he agrees in the alternative that guidance from the Colorado Supreme Court is appropriate.

depriving an individual of the full and equal enjoyment of a place of public accommodation. Depending on how CADA is construed, it may not implicate Plaintiffs' conduct at all, thus avoiding Plaintiffs' constitutional question. Moreover, the statutory interpretation question presented in this case is a matter of first impression affecting important state anti-discrimination policy. In circumstances like these, certification to the state supreme court permits federal courts to avoid considering "the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 75 (1997). This Court should certify the state statutory interpretation question to the Colorado Supreme Court.

## BACKGROUND

### I. CADA prohibits places of public accommodation from denying customers the "full and equal" enjoyment of goods or services.

Plaintiffs challenge, among other provisions, CADA's "Accommodations Provision," which provides that "a person in a place of public accommodation" may not "directly or indirectly, . . . refuse, withhold from, or deny to an individual or a group… the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation" based on a protected characteristic, including gender expression. C.R.S. § 24-34-601(2)(a). In other words, this provision ensures that any individual who wants to patronize a business is not denied the "full and equal enjoyment" of that accommodation. *See 303 Creative v. Elenis*, 600 U.S. 570, 581 (2023).

"Sexual orientation" was added as a protected class under CADA in 2008 and was defined at the time to include "transgender status." *See* 2008 Colo. Legis. Serv. Ch.

341 (S.B. 08–200). In 2009, the Commission promulgated a rule clarifying that unlawful harassment based on sexual orientation can, depending on the circumstances, include "[d]eliberately misusing an individual's preferred name, form of address, or gender-related pronoun." 3 CCR 708-1, Rule 81.6(A)(4). "Gender expression" and "gender identity" were added as distinct protected classes under CADA in 2021. *See* 2021 Colo. Legis. Serv. Ch. 156 (H.B. 21-1108). Recently and serving as the impetus for these three actions, House Bill 25-1312 clarified that CADA's definition of "gender expression" includes an individual's "chosen name, and how the individual chooses to be addressed." *See* H.B. 25-1312 § 8, *codified at* C.R.S. § 24-34-301(3.5), (9).

## II. Plaintiffs intend to use names and pronouns contrary to customers' gender expression.

Plaintiffs in the three actions include (1) two medical doctors and a medical practice (Drs. Travis Morrell, Valerie Leswing, and Mountain Pediatrics in *Defending Education*, Case No. 1:25-cv-01572-RMR-MDB),[2] (2) a clothing retailer (Committee of Five d.b.a XX-XY Athletics in *XX-XY*, Case No. 1:25-cv-01668-RMR-MDB), and (3) a bookstore (Doxa Enterprises d.b.a Born Again Used Books in *Doxa*, Case No. 1:25-cv-02177-RMR-MDB). Each avers that they will gladly provide goods and/or services to anyone regardless of their gender expression, but will decline to use pronouns consistent with a person's gender if the Plaintiff knows the customer's gender to be different than their sex assigned at birth (called "misgendering"). Except for Born Again Used Books, each Plaintiff will also refer to a transgender or nonbinary person by a name they no longer use rather than their chosen name (called "deadnaming").

[2] Plaintiffs Protect Kids Colorado, Colorado Parent Advocacy Network, and Defending Education have been dismissed from Case No. 1:25-cv-01572-RMR-MDB.

Plaintiffs all allege that CADA prohibits this conduct and thus violates their right to free speech. *Defending Education*, Dkt. 25 at ¶¶ 137-154; *XX-XY*, Dkt. 1 at ¶¶ 221-235; *Doxa*, Dkt. 1 at ¶¶ 182-196. Among other claims, each Plaintiff seeks declaratory and injunctive relief, as applied and facially, against the definitions of "gender expression" and "chosen name," including as those definitions are applied through the Accommodations Provision. *See Defending Education*, Dkt. 25 at 56; *XX-XY*, Dkt. 1 at 49-50; *Doxa*, Dkt. 1 at 40-41.

## III. The parties interpret the Accommodations Provision differently.

At root, the parties disagree about what conduct violates the Accommodations Provision. The straightforward example of a violation occurs when a public accommodation refuses to provide goods or services to individuals based on their protected status—for example, a restaurant that will only serve white customers. But the cases here are not as straightforward. Plaintiffs each assert that they treat all members of the public with respect and do not withhold their goods and services from anyone on the basis of a protected class; they simply will not use an individual's chosen name and/or gender-related pronouns if inconsistent with sex at birth. The parties dispute whether and when this intended conduct amounts to a "denial of full and equal enjoyment" under the Accommodations Provision.

Plaintiffs' claims, to differing degrees, rely on the argument that CADA, after HB25-1312, prohibits deadnaming and misgendering. For example, the *Defending Education* plaintiffs assert that deadnaming and misgendering *per se* deny full and equal enjoyment of a place of public accommodation. *See Defending Education*, Dkt. 98 at 18 ("Under CADA's plain text," "it is illegal to misgender or deadname someone—full

stop."); *id*. (arguing "speakers" may not deny someone "equal enjoyment of a public accommodation by refusing to use their 'chosen name' or other terms by which they 'choos[e] to be addressed'" but "[t]hat is what it means to 'deadname' or 'misgender' someone."). XX-XY and Doxa take a slightly different approach, arguing that the "full and equal enjoyment" provision requires "undifferentiated treatment in how businesses address customers." *XX-XY*, Dkt. 84 at 15; *Doxa*, Dkt. 46 at 7. They assert that a policy of always using "biologically accurate" pronouns "denies transgender-identifying individuals the service, privilege, or accommodation enjoyed by other individuals[.]" XX-XY, Dkt. 84 at 12; Doxa, Dkt. 46 at 4. They also argue that being referred to by a customer's chosen pronouns is a service, so a refusal to use chosen pronouns is an outright denial of service. XX-XY, Dkt. 84 at 16; Doxa, Dkt. 46 at 8.

In contrast, Division and Commission Defendants contend that CADA does not *per se* prohibit misgendering and deadnaming. Rather, statements made to a customer based on that person's protected status—including, but not limited to, misgendering and deadnaming—only amount to a denial of the customer's full and equal enjoyment of the public accommodation's goods and services when those statements rise to the level of harassment by creating a subjectively and objectively hostile environment. *See Defending Education*, Dkt. 132 at 1, 4; Dkt. 98-1 at 4-7.[3] Indeed, the Commission's rules have incorporated the harassment standard since 2009. *See id*. at 5-6 (citing 3 CCR 708-1, Rule 81.6(a)(4)).[4]

[3] *Accord XX-XY*, Dkt. 119 at 1, 4; *Doxa*, Dkt. 78 at 1,4.

[4] *Accord XX-XY*, Dkt. 119 at 5-6; *Doxa*, Dkt. 78 at 5-6.

By seeking certification, Division and Commission Defendants ask that the Colorado Supreme Court determine in the first instance whether Division and Commission Defendants' interpretation of CADA is correct.

## LEGAL STANDARD

Under Colorado Appellate Rule 21.1(a), any court may certify a question of state law to the Colorado Supreme Court for which: (1) resolution of the question "may be determinative" of the case before the certifying court; and (2) there exists "no controlling precedent" from the Colorado Supreme Court. This circuit, in turn, holds that federal courts may certify a question of state law when the question "(1) may be determinative of the case at hand and (2) is sufficiently novel that [the federal court] feel[s] uncomfortable attempting to decide it without further guidance." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). In cases of statutory interpretation, "the touchstone of [the] certification inquiry is whether the state statute is readily susceptible of an interpretation that 'would avoid or substantially modify the federal constitutional challenge to the statute.'" *Kansas Jud. Rev. v. Stout*, 519 F.3d 1107, 1119–20 (10th Cir.) (*quoting Bellotti v. Baird*, 428 U.S. 132, 148 (1976)), *certified question answered*, 287 Kan. 450, 196 P.3d 1162 (2008), *opinion after certified question answered*, 562 F.3d 1240 (10th Cir. 2009).

A certification order must include: (1) "[t]he questions of law to be answered"; and (2) "[a] statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose." C.A.R. 21.1(c).

## ARGUMENT

### I. Certification to the Colorado Supreme Court is consistent with the principles of federalism and constitutional avoidance.

In the interests of federalism, comity, and constitutional avoidance, this Court should certify the question to the Colorado Supreme Court to interpret CADA in the first instance.

Certification "allows a federal court faced with a novel state-law question to put the question directly to the State's highest court." *Kansas Jud. Rev.*, 519 F.3d at 1119 (citations omitted) (quoting *Arizonans*, 520 U.S. at 76). The procedure promotes "cooperative judicial federalism." *Id*. (quoting *Lehman Bros. v. Schein,* 416 U.S. 386, 391 (1974)). It is also "consistent with [the federal court's] duties to avoid passing on the constitutionality of a statute where possible, and, in particular, to avoid considering 'the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts.'" *Id.* (quoting *Arizonans*, 520 U.S. at 75) (citation omitted). Indeed, courts in this circuit "wish to avoid, when possible, deciding constitutional questions and thereby overturn legislative enactments and etch in stone rules of law beyond the reach of [the] most democratic process." *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs*, 613 F.3d 1229, 1239 (10th Cir. 2010) (citation omitted).

The policy justifications for certifying questions are the same as those underlying the doctrine of *Pullman* abstention: that federal courts should avoid premature constitutional adjudication and the risk of rendering advisory opinions. *See generally Caldara v. City of Boulder*, 955 F.3d 1175 (10th Cir. 2020) (deference to state court via *Pullman* abstention doctrine); *Arizonans*, 520 U.S. at 76 (*Pullman* avoids "federal-court

error in deciding state-law questions antecedent to federal constitutional issues," by allowing state courts to resolve, as in this case, "unsettled state-law issues."); *Moore v. Sims*, 442 U.S. 415, 428 (1979) ("[T]he *Pullman* concern [is] that a federal court will be forced to interpret state law without the benefit of state-court consideration and . . . render[ ] the federal-court decision advisory and the litigation underlying it meaningless."). While serving the same interests of comity and constitutional avoidance, the certification procedure has the advantages over *Pullman* abstention of "reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response" from the state court. *Kansas Jud. Rev.*, 519 F.3d at 1119.

## II. The elements for certification are satisfied.

This case presents exactly the situation for which certification exists. Plaintiffs seek a permanent injunction of several CADA provisions, some of which have existed for decades and some of which took effect in 2025. The interpretative issue before the Court in this case is novel and likely determinative of Plaintiffs' federal constitutional claims challenging the Accommodations Provision.

### a. The question is novel.

No state or federal court has ever determined the circumstances under which statements directed to an individual's protected status, on their own, rise to the level of denying the full and equal enjoyment of a public accommodation's services as prohibited by CADA. Colorado's public accommodations laws are nearly as old as the state itself. In 1885, Colorado passed the Public Accommodations Act, which guaranteed "full and equal enjoyment of the accommodations, advantages, facilities," of all places of public accommodations "to citizens of every race and color." J. David Penwell, *Civil Rights in Colorado*, 46 Denv. L.J. 181, 182 (1969). That statute stayed on

the books until those public accommodations protections were incorporated into CADA in 1979. H.B. 1355, § 3 (1979).

Since its inception, CADA has included the Accommodations Provision, which prohibits treatment of customers based on their protected class status that denies them the full and equal enjoyment of a place of public accommodation. H.B. 1355, § 3 (1979). Recent cases addressing the Accommodations Provision have involved clear denials of service, rather than statements based on protected class status. *See, e.g.*, *Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*, 584 U.S. 617 (2018); *303 Creative v. Elenis*, 600 U.S. 570 (2023); *Boe v. Children's Hosp. Colorado*, 2026 CO 32. For as long as CADA has existed, no state or federal court has decided whether (and, if so, when) statements directed to an individual's protected status might violate the Accommodation Provision—this includes, for example, racial or religious slurs. It was only in response to Colorado's clarification of "gender expression" in 2025 to include "chosen name" and "how someone chooses to be addressed," that Plaintiffs brought suit alleging that CADA violates free speech rights by prohibiting certain statements based on individuals' protected status—here, gender expression.

Thus, the question currently before this Court about how to interpret the Accommodations Provision is novel.

**b. The Accommodations Provision is readily susceptible to Division and Commission Defendants' proposed interpretation.**

Division and Commission Defendants do not understand CADA to outright prohibit deadnaming and misgendering because, since 2009, Division and Commission Defendants have interpreted the Accommodations Provision as incorporating a harassment standard. *See* 3 CCR 708-1, Rule 81.6(a)(4). Under that standard,

statements directed to an individual's protected status deny the "full and equal" enjoyment of goods or services only when they rise to the level of creating a subjectively and objectively hostile environment.

While there is no Colorado court case addressing this proposed interpretation, the discriminatory harassment standard has a long pedigree in anti-discrimination law, and CADA is thus susceptible to Division and Commission Defendants' longstanding interpretation. For example, Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of race, sex, religion, national origin, or color. 42 U.S.C. § 2000e-2. In *Meritor Sav. Bank, FSB v. Vinson*, the Supreme Court endorsed the EEOC's administrative guidance that harassment based on protected class status—and not just "tangible" "economic" discrimination—constitutes discrimination. 477 U.S. 57 (1986). Prohibited sexual harassment is defined to include conduct—including verbal conduct—that creates an "intimidating, hostile, or offensive working environment." *Id*. at 65; *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (reaffirming the *Meritor* standard).

Consistent with this tradition, Division and Commission Defendants interpret the Accommodations Provision to apply to statements only when those statements create a subjectively and objectively hostile environment. CADA is readily susceptible to their interpretation.

**c. Resolving the question would likely be dispositive of the ultimate federal constitutional issues.**

The Colorado Supreme Court's interpretation of CADA has the potential to "avoid or substantially modify the federal constitutional challenge to the statute." *Kansas Jud.*

*Rev.*, 519 F.3d at 1119 (citations omitted). In contrast to Division and Commission Defendants' harassment standard, Plaintiffs urge an interpretation of CADA that makes deadnaming and misgendering *per se* prohibited, and thus insist that CADA reaches a much larger universe of a public accommodation's statements. Determining whether (and, if so, when) CADA applies to statements based on protected class status will likely clarify the appropriate constitutional inquiries. *E.g., Bates v. Pakseresht*, 146 F. 4th 772, 787 (9th Cir. 2025) (observing that "Oregon's [First Amendment] position would be much stronger" had the state "simply outlawed harassment" based on LGBTQ status); *Taking Offense v. California*, 18 Cal. 5th 891, 924 (Cal. 2025) (concluding that First Amendment does not bar statute interpreted as applying only to speech that rises to the level of harassment based on protected LGBTQ+ status); *see also R.A.V. v. City of St. Paul,* 505 U.S. 377, 389 (1992) (observing that Title VII may prohibit "sexually derogatory 'fighting words'" without running afoul of the First Amendment).

## CONCLUSION

For the reasons set forth above, Division and Commission Defendants request that the Court certify the following question of law to the Colorado Supreme Court:

> When a complainant's claim for denial of the full and equal enjoyment of a place of public accommodation under C.R.S. § 24-34-601(2)(a) turns exclusively on statements made based on the complainant's protected status, must the complainant establish that the statements create a subjectively and objectively hostile environment?

Dated this 9th day of October, 2026.

PHILIP J. WEISER
Attorney General

*For Defendants Aubrey C. Sullivan, Sergio Cordova, Geta Asfaw, Mayuko Fieweger, Daniel S. Ward, Jade R. Kelly and Eric Artis:*

*s/ Nora Q.E. Passamaneck*

Nora Q.E. Passamaneck
Senior Assistant Attorney General
Helen Norton
Deputy Solicitor General
Janna K. Fischer
Senior Assistant Attorney General
Dominick D. Schumacher
Assistant Attorney General
1300 Broadway, 10th Floor, Denver, CO 80203
Telephone: (720) 508-6000
Nora.Passamaneck@coag.gov
Helen.Norton@coag.gov
Janna.Fischer@coag.gov
Dominick.Schumacher@coag.gov